**Harold P. DuCloux, III**
**Assistant Federal Public Defender**
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
Harold_DuCloux@fd.org

**Attorney for Defendant**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. 3:11-CR-00375-HA |
| **Plaintiff,** | |
| v. | **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| **WILLIAM FLOYD MOORE,** | **(ORAL ARGUMENT REQUESTED)** |
| **Defendant.** | |

The defendant, William Floyd Moore, through his attorney, Harold DuCloux, III, hereby moves the Court to suppress all evidence obtained from the search incident to arrest of Mr. Moore because the underlying arrest was unlawful under the Fourth Amendment

### STATEMENT OF THE CASE

Mr. Moore is currently charged with bank robbery under 8 U.S.C. § 2113(a) and felon in possession of a firearm under 8 U.S.C. § 922(g) and § 924(e)(1). Trial is scheduled for July 31, 2012.

On September 8, 2011, the Milwaukie police arrested Mr. Moore without a warrant after stopping his vehicle as he was leaving his residence. The police did not have probable cause to

believe that Mr. Moore had committed a crime. Therefore, Mr. Moore's arrest violated the Fourth Amendment and all evidence derived from the search incident to his arrest must be suppressed.

## STATEMENT OF FACTS

On September 8, 2011, at 11:25 a.m., the U.S. Bank inside Albertson's at 10830 S.E. Oak Street, in Milwaukie, Oregon, reported a bank robbery. Affidavit at p.1 [hereinafter Aff.]. Shortly after, police arrived on the scene to conduct an investigation.

Officer Kevin Krebs reported that he spoke to a bank teller, Skii Von Dracek, who received the robber's demand note and provided him with bait cash. Aff. at p.1, ¶ 5. The officer stated that Ms. Von Dracek described the robber as a white male; 35 to 40 years old; approximately 6 feet tall; thin build, 180-190 pounds; with a light complexion and dark mustache; and wearing blue jeans, a dark shirt, a blue baseball cap, glasses, and a bandana. Aff. at p.1, ¶ 6.

While surveying the area outside Albertson's, Officer Truong was approached by a male witness. Truong Police Rpt. at p. 1. The officer described their conversation as follows:

> [The witness] told me that he was outside Starbucks when noticed a male that was acting suspicious. He stated that the male passed by him and was heading down Oak St. He said the male was walking with a good pace and kept looking back behind him. He told me the male came from Albertsons. He stated that the male was Caucasian, in his 30's, wearing a black baseball cap, sunglasses, a bandana, and wearing dark clothing. He said the male crossed over Oak St. and got into a vehicle that was parked in the parking lot over by FedEx. He told me the vehicle was a champagne colored pickup truck with an open bed (no canopy). He stated he thought the vehicle was a Ford Ranger. He said the male took off his dark shirt and put on a white shirt. He told me male exited the parking lot and headed south on Oak St. He stated the male then proceeded east on Hwy 224. I asked [the witness] if he saw the male again could he identify him. He said yes.

Truong Police Rpt. at p.1; *see also* Aff. at p.2, ¶ 8.

Later, while still investigating, police were approached by another male witness. This witness stated that he was employed at a neighboring business and that "he knew who the police

**Page 2   MOTION TO SUPPRESS EVIDENCE**

were looking for." Aff. at p.2, ¶ 9. This witness, D.G., then identified Mr. Moore. D.G. knew Mr. Moore through his wife and provided Moore's address. *Id*. D.G. also told the officers that Mr. Moore had been previously imprisoned for robbery. *Id*.

Based on this information, the police drove to Mr. Moore's home and engaged in surveillance of his residence. Aff. at p. 2, ¶¶ 11-12. At approximately 3:09 p.m., the officers initiated a traffic stop when Mr. Moore left his home. Aff. at p. 2, ¶ 12; *see also* Dye Police Rpt. at p. 2 (providing the time of the arrest). Mr. Moore was "taken into custody without incident." Aff. at p. 2, ¶ 12. During the arrest, the police searched Mr. Moore and seized an unidentified amount of cash and a cellular phone. Aff. at pp. 2-3, ¶ 13.

## ARGUMENT

**I.  ALL EVIDENCE SEIZED FROM THE SEARCH INCIDENT TO ARREST OF MR. MOORE SHOULD BE SUPPRESSED BECAUSE THE OFFICERS LACKED PROBABLE CAUSE TO ARREST HIM.**

The information known to the officers at the time of Mr. Moore's arrest does not give rise to probable cause that Mr. Moore had just committed robbery.

### A.   The Probable Cause Standard For A Warrantless Arrest.

The Fourth Amendment requires a warrantless arrest to be supported by probable cause. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981)). The determination of probable cause for a warrantless arrest is an objective test that examines the totality of the circumstances. *Id*. at 1072. Probable cause is established if the government proves that "at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an

offense." *United States v. McCarthy*, 648 F.3d 820, 838-39 (9th Cir. 2011) (quoting *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005)); *see also Lopez*, 482 F.3d at 1072. This test requires more than an officer's mere suspicion, rumor, or even strong reason to suspect. *Lopez*, 482 F.3d at 1072 (citing *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)).

Moreover, "[i]t is well established that a person's mere presence or mere propinquity to criminal activity does not, without more, give rise to probable cause." *Id*. at 1074. Simply being in the vicinity of the scene of a crime is not enough for the officers to establish probable cause. Similarly, facts that are "just as consistent with [the defendant's] innocence as with suspicious conduct" does not "constitute particularized evidence of suspicious criminal activity." *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988) (quoting *United States v. Erwin*, 803 F.2d 1505, 1511 (9th Cir. 1986)); *see also United States v. Pinion*, 800 F.2d 976, 980 (9th Cir. 1986) (noting that "ambiguous conduct of a person found in the proximity of the scene of a crime does not establish probable cause").

Beyond presence in the vicinity or innocent conduct, the use of informants and citizen witnesses by police also displays the heightened probable cause standard. The Ninth Circuit in *United States v. Struckman* stated that "officer may not solely rely on the claim of a citizen witness but must independently investigate the basis of the witness' knowledge or interview other witnesses." 603 F.3d 731, 742 (9th Cir. 2010) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)). In particular, the Ninth Circuit noted in *Struckman* that when the officers are faced with a citizen witness's general report, the officers should do further investigation to corroborate the witness's report. *Id*.

> B. **The Warrantless Arrest Of Mr. Moore Was Not Supported By Probable Cause That He Committed A Crime, And, Therefore, The Arrest Violated The Fourth Amendment.**

The police received the following information about the suspect of the bank robbery:

(1) The U.S. Bank inside Albertson's had been robbed by a white man with a black moustache; he was approximately 35 to 40 years old, six feet tall, with a thin build, around 180 to 190 pounds; and he was wearing blue jeans, a dark shirt, blue baseball cap, glasses, and a bandana.

(2) A man outside the bank, J.T., said he saw a person fitting the above description leave Albertson's, cross the street, get into a champagne colored pickup truck, and change shirts.

(3) D.G., an acquaintance of William Moore, saw him get into his champagne colored Ford Ranger pickup, change shirts, and drive eastbound on Highway 224. D.G. also told police that Moore had served prison time for previous robberies.

(4) Police obtained a Department of Motor Vehicles record that a champagne colored Ford Ranger pickup was registered to Mr. Moore.

This information standing alone is insufficient to establish probable cause for an arrest. Further, officers ignored other information that further diminished the connection between Mr. Moore and the robber. First, neither D.G. nor J.T. witnessed the robbery; conversely, none of the tellers inside the store saw what occurred outside. Second, none of the bank tellers, D.G., or J.T. identified Mr. Moore through a photographic lineup or throw-down. Last, the descriptions provided by the bank teller and bystander witnesses are inconsistent with Mr. Moore's age and appearance.

Mr. Moore was initially connected to the robbery by a single witness's statement, who observed Mr. Moore engaging in innocent activity, and the fact that Mr. Moore had previously been convicted of robbery. Furthermore, other witnesses' descriptions of the events surrounding the

robbery (1) do not connect Mr. Moore to the robbery or (2) fail to provide anything more than the fact that Mr. Moore may have been in the vicinity of the bank. This information known to the police at the time of the arrest does not support a finding of probable cause that Mr. Moore committed the bank robbery.

### C. The Evidence Seized From The Search Incident To Arrest Of Mr. Moore Should Be Suppressed Because The Arrest Was Unlawful.

A search of the arrestee's person incident to arrest is one of the "specifically established and well-delineated exceptions" to the Fourth Amendment's search warrant requirement. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *accord United States v. Ruckes*, 586 F.3d 713, 717 (9th Cir. 2009). However, this exception is premised on the validity of the underlying arrest. If the underlying arrest is invalid, all evidence derived from the search incident to arrest is also invalid. *United States v. Ricardo D.*, 912 F.2d 337, 342 (9th Cir. 1994) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)) ("It is well established that the [F]ourth [A]mendment exclusionary rule applies to evidence obtained from an unlawful arrest."). Because the arrest is unlawful, "[e]vidence seized in violation of the Fourth Amendment, including any 'fruit of the poisonous tree,' may not be used in a criminal proceeding against the victim of the illegal search and seizure." *United State v. Cervantes*, 2012 WL 1700840, at *7 (9th Cir. 2012). Therefore, all evidence seized from the search incident to arrest of Mr. Moore must be suppressed because the underlying arrest lacked probable cause.

Respectfully submitted on July 10, 2012.

                                          /s/ Harold P. DuCloux, III
                                          Harold P. DuCloux, III
                                          Attorney for Defendant