**Harold P. DuCloux, III**
**Assistant Federal Public Defender**
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
Harold_DuCloux@fd.org

**Attorney for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. 3:11-CR-00375-HA |
| **Plaintiff,** | |
| v. | **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR *FRANKS* HEARING** |
| **WILLIAM FLOYD MOORE,** | |
| **Defendant.** | **(ORAL ARGUMENT REQUESTED)** |

The defendant, William Floyd Moore, through his attorney, Harold DuCloux, III, hereby moves the Court to suppress evidence obtained from the search warrant issued and executed on September 9, 2011, because the warrant's affidavit intentionally and/or recklessly included material omissions and false statements which were necessary to the finding of probable cause. Furthermore, because Mr. Moore has made a substantial preliminary showing under the two-part *Franks* test, he is entitled to an evidentiary hearing.

**STATEMENT OF THE CASE**

Mr. Moore is currently charged with bank robbery, 18 U.S.C. § 2113(a), and felon in possession of a firearm, 8 U.S.C. §§ 922(g) and 924(e)(1). Trial is scheduled for July 31, 2012.

During the investigation of this case, on September 9, 2011, the government applied for a search warrant for a 1996 Ford Ranger pickup truck for evidence of bank robbery. Magistrate Judge Papak granted the warrant, and the government executed it later that day. The evidence from the search of the vehicle should be suppressed because material omissions and misleading statements were intentionally and/or recklessly included in the application in support of the warrant. Alternatively, Mr. Moore has made a substantial preliminary showing under *Franks v. Delaware*, 438 U.S. 154 (1978), entitling him to an evidentiary hearing.

**STATEMENT OF FACTS**

On September 8, 2011, at 11:25 a.m., the U.S. Bank inside Albertson's at 10830 S.E. Oak Street, in Milwaukie, Oregon, reported a bank robbery. Affidavit at p.1 [hereinafter Aff.]. Shortly after, police arrived on the scene to conduct an investigation.

Officer Kevin Krebs reported that he spoke to a bank teller, Skii Von Dracek, who received the robber's demand note and provided him with bait cash. Aff. at p.1, ¶ 5. The officer stated that Ms. Von Dracek described the robber as a white male; 35 to 40 years old; approximately 6 feet tall; thin build, 180-190 pounds; with a light complexion and dark mustache; and wearing blue jeans, a dark shirt, a blue baseball cap, glasses, and a bandana. Aff. at p.1, ¶ 6.

While surveying the area outside Albertson's, Officer Truong was approached by a male witness, J.T. Truong Police Rpt. at p. 1. The officer described their conversation as follows:

> [The witness] told me that he was outside Starbucks when noticed a male that was acting suspicious. He stated that the male passed by him and was heading down Oak

> St. He said the male was walking with a good pace and kept looking back behind him. He told me the male came from Albertsons. He stated that the male was Caucasian, in his 30's, wearing a black baseball cap, sunglasses, a bandana, and wearing dark clothing. He said the male crossed over Oak St. and got into a vehicle that was parked in the parking lot over by FedEx. He told me the vehicle was a champagne colored pickup truck with an open bed (no canopy). He stated he thought the vehicle was a Ford Ranger. He said the male took off his dark shirt and put on a white shirt. He told me male exited the parking lot and headed south on Oak St. He stated the male then proceeded east on Hwy 224. I asked [the witness] if he saw the male again could he identify him. He said yes.

Truong Police Rpt. at p.1; *see also* Aff. at p.2, ¶ 8.

Later, while still investigating, police were approached by another male witness. This witness stated that he was employed at a neighboring business and that "he knew who the police were looking for." Aff. at p.2, ¶ 9. D.G. then identified Mr. Moore. D.G. knew Mr. Moore through his wife and provided Moore's address. D.G. told investigating officers that he saw Mr. Moore get into his vehicle and change into a white jersey style shirt. He called out Mr. Moore's name but did not receive an answer. The driver of the truck then backed out of the parking space, headed south onto Oak Street, and then east on Highway 224. *Id*. D.G. also told the officers that Mr. Moore had been previously imprisoned for robbery. *Id*.

Based on this information, the police drove to Mr. Moore's home and engaged in surveillance of his residence. Aff. at p. 2, ¶¶ 11-12. At approximately 3:09 p.m., the officers initiated a traffic stop when Mr. Moore left his home. Aff. at p. 2, ¶ 12; *see also* Dye Police Rpt. at p. 2 (providing the time of the arrest). Mr. Moore was "taken into custody without incident." Aff. at p. 2, ¶ 12. During the arrest, the police searched Mr. Moore and seized an unidentified amount of cash and a cellular phone. Aff. at pp. 2-3, ¶ 13.

The officers towed Mr. Moore's vehicle, a champagne colored Ford Ranger pickup truck, to the Milwaukie Police Department. Application for Search Warrant at p.1. A search warrant for the

**Page 3   MOTION TO SUPPRESS EVIDENCE AND FOR *FRANKS* HEARING**

car was issued on September 9, 2011, and the search was executed later that day. Warrant at pp.1-2. From the search of Mr. Moore's vehicle, the government seized bait money and a loaded firearm.

## ARGUMENT

I. **THE COURT SHOULD SUPPRESS ALL EVIDENCE SEIZED FROM THE SEARCH OF MR. MOORE'S VEHICLE BECAUSE PROBABLE CAUSE FOR THE SEARCH WARRANT WAS PREMISED ON INTENTIONAL AND/OR RECKLESS OMISSIONS AND FALSE STATEMENTS IN THE WARRANT APPLICATION.**

Mr. Moore is entitled to a *Franks* hearing because the search warrant applicant intentionally or recklessly included false statements and omissions in the affidavit. These statements and omissions were essential to the finding of probable cause to search Mr. Moore's vehicle for evidence of bank robbery. Because the affidavit lacks probable cause when the false statements and omissions are corrected, the search warrant is invalid. Therefore, all evidence seized from the search of Mr. Moore's vehicle, including, but not limited to, the bait money and firearm, must be suppressed. Alternatively, Mr. Moore requests an evidentiary, *Franks*, hearing to resolve the misrepresentations in the affidavit.

    A.    **The *Franks* Hearing Standard.**

Under *Franks*, a defendant may challenge a facially valid warrant on the grounds that the affidavit supporting the warrant contains intentionally or recklessly false statements or omissions. 438 U.S. 154, 155-56 (1978); *see United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) (holding that *Franks* extends to "deliberate or reckless omissions of fact that tend to mislead"). The defendant does not need to offer "clear proof of deliberate or reckless omissions or misrepresentations." *United States v. Gonzales*, 412 F.3d 1102, 1111 (9th Cir. 2008) (citing *Stanert*, 762 F.2d at 781). The defendant must provide only a substantial preliminary showing that: (1) false statements were intentionally or recklessly included in the search warrant affidavit and (2) without

these statements, the affidavit would not support a finding of probable cause. *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citing *Franks*, 438 U.S. at 155-56). If the defendant makes a substantial showing, the "Fourth Amendment requires that a hearing be held at the defendant's request." *Stanert*, 762 F.2d at 781 (citing *Franks*, 438 U.S. at 155-56).

At the hearing, the defendant has the burden to prove by a preponderance of the evidence that (1) the omissions and false statements were intentionally or recklessly provided by the search warrant applicant and (2) the omissions and false statements are material to the finding of probable cause. *Franks*, 438 U.S. at 156. If the defendant meets this burden, "the search must be voided and all fruits of the search excluded to the same extent." *Id*.

> **B.     The Search Warrant Affidavit For Mr. Moore's Vehicle Contains Intentional And/Or Reckless False Statements And Omissions Regarding The Information Police Received From Witnesses At The Scene Of the Robbery.**

The affidavit in support of the search warrant application is misleading because it contains material false statements and omissions regarding the alleged connection between Mr. Moore, his vehicle, and the bank robbery. The search warrant applicant made false statements and critical omissions about the witnesses who viewed the robbery and the surrounding events. Additionally, there are numerous omissions throughout the warrant pertaining to the police investigation and the information gathered about possible suspects. The affidavit lacks probable cause to search Mr. Moore's vehicle for evidence of the robbery.

First, the affidavit misrepresents the information received by police regarding the activities of the unknown robber. The affidavit states:

> The robber left the bank counter and exited Albertson's west side doors. *Witnesses* reported that the robber walked west across the parking lot to cross SE Oak Street and enter [sic] another parking lot near a strip mall, north of the Walgreens located

> at 10903 SE Oak Street, Milwaukie, Oregon.  The robber took off his dark long sleeve shirt, which exposes a white shirt, and got into a champagne colored Ford Ranger pickup truck.  The robber drove onto SE Oak Street and then onto Highway 224 where he was last seen traveling eastbound on Highway 224.

Aff. at p. 2, ¶ 8 (emphasis added).  Contrary to the affidavit, there is not one witness who viewed the robber's activity from the beginning of the robbery to the robber's departure from the scene.

     As described in the Statement of Facts above, a sole bystander witness told an officer that he saw a male come from Albertson's.  Truong Police Rpt. at p. 1.  This witness did not expressly identify the male as the robber, nor did the witness see any part of the bank robbery occur inside the store.  *Id*.  Although one officer reported that an unknown number of unidentified employees stated that the robber left through the west side doors, that is where their statements end.  Huteson Police Rpt. at p. 1.  The use of "Witnesses" in the affidavit and the following description of the events misrepresents the actual information received by the officers.  The affidavit falsely indicates that multiple witnesses viewed the robbery, robber's egress, and subsequent getaway when in fact they did not.

     Second, the affidavit contains a significant omission regarding the second witness, D.G., the employee of the neighboring business, who purportedly connected Mr. Moore and his vehicle to the robbery.  The affidavit states that D.G. claimed that Mr. Moore was "who the police were looking for."  Aff. at p. 2, ¶ 9.  After further discussion with the police regarding Mr. Moore's alleged actions, D.G. gave the police Mr. Moore's address.  *Id*.  After this, the affidavit's account of D.G.'s statements ends.  *Id*. at p. 2, ¶¶ 9-10.  The affidavit's summary of D.G.'s conversation with the police omits the crucial fact that D.G. was not at his workplace when the police arrived.  Truong Police Rpt. at p. 2.  D.G. arrived on the scene *after* the officers began searching the area for evidence.  *Id*.  The

affidavit's exclusion of D.G.'s whereabouts calls into doubt the witness's veracity and reliability and lacks necessary corroboration of D.G.'s statements.

Finally, the affidavit contains additional omissions that negate any probable cause that Mr. Moore was connected to the robbery. The affidavit omits that the search of Mr. Moore incident to arrest revealed no evidence of the robbery. It also omits that the clothing worn by Mr. Moore upon arrest was different than the clothing of the robber. It omits that the description of the robber differs in significant respects to the description of Mr. Moore. The teller described the robber as being 30 years old with a fake black moustache. Mr. Moore is 52 years old, but looks older. Also, Mr. Moore has a distinctively real gray moustache. The affidavit misrepresents the statements made by Mr. Moore's ex-wife to the police. The police wrote in their affidavit that his wife Keeley told them Mr. Moore had recently been dying his grey moustache black and then washing it out. In fact, Keeley told Officer Garret that one time, a month before the interview, Mr. Moore had put something in his moustache to darken it but had washed it out. Additionally, the affidavit omits that the officers reviewed the surveillance tapes of the nearby businesses and that the tapes failed to corroborate D.G.'s statements. The myriad of omissions indicate that the search warrant applicant selectively provided information in the affidavit to further a connection between Mr. Moore and the robbery.

### C. The Warrant Lacks The Necessary Probable Cause To Search Mr. Moore's Vehicle.

The application does not support a finding of probable cause to search Mr. Moore's vehicle for evidence of the bank robbery. Probable cause for a search warrant is established if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006). The affidavit must provide "a reasonable nexus between the activities supporting probable cause and

**Page 7   MOTION TO SUPPRESS EVIDENCE AND FOR *FRANKS* HEARING**

the locations to be searched." *United States v. Ocampo*, 937 F.3d 485, 490 (9th Cir. 2003). Correcting the omissions and false statements devoids the affidavit of probable cause that evidence would be found in Mr. Moore's vehicle because the connection between Mr. Moore, his vehicle, and the robbery is unsupported.

First, by correcting the number of witnesses and providing the necessary clarification of the activity of the "robber," there is little, if any, corroboration on the information provided by the witnesses. Only a single witness reported the activities of a "suspicious" male outside the store. No witnesses viewed the robber's actions from the beginning of the robbery to the robber's departure. Statements by an unknown number of employees that the robber left through the west doors and a single statement by a witness outside the Albertson's describing a man walking to his vehicle are insufficient to create a reasonable nexus between Mr. Moore's vehicle and the robbery.

Second, by including the omission in the affidavit as to D.G.'s whereabouts before his statement, D.G.'s alleged connection between Mr. Moore's vehicle and the robbery is completely undermined. There is no confirmation that D.G. even saw Mr. Moore earlier that day. Furthermore, with the omission included, the affidavit provides no information on exactly how D.G. came to know of the robbery, especially considering his absence from the scene and his observation of Mr. Moore engaged in only ambiguous or innocent activity.

By correcting the misrepresentations and including the omissions, it is apparent that the affidavit provides less than a full picture of the information gathered by the police. It also becomes apparent that the affidavit, when corrected, does not support a finding of probable cause that evidence of the robbery would be found in Mr. Moore's vehicle.

**D. Because The Warrant Lacks Probable Cause, This Court Should Suppress All Evidence From The Search Or, In The Alternative, Hold A *Franks* Hearing.**

Mr. Moore has established that the application for the search warrant meets the two-part *Franks* test: the omissions and false statements were recklessly and/or intentionally included in the affidavit and these statements were necessary to the finding of probable cause. *See Craighead*, 539 F.3d at 1080 (quoting *Franks*, 438 U.S. at 155-56). Because this standard is met, the remedy is suppression of all evidence derived from the unlawful search warrant. *United States v. Leon*, 468 U.S. 897, 923 (1984) ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing the warrant was mislead by information in an affidavit that the affiant knew or would have known was false except for his reckless disregard for the truth."); *accord Stanert*, 762 F.2d 775, 780 (9th Cir. 1985). Therefore, this Court should suppress all evidence obtained by the government during the search of Mr. Moore's vehicle. In the alternative, this Court should grant Mr. Moore's motion for a *Frank*s hearing to resolve the factual inconsistencies within the warrant's application. *See Franks*, 438 U.S. at 156 (requiring that when a defendant makes the requisite showing, the court must hold an evidentiary hearing).

Respectfully submitted on July 10, 2012.

      /s/ Harold P. DuCloux, III
      Harold P. DuCloux, III
      Attorney for Defendant